Opinion
 

 TURNER, P. J.—
 

 I. Introduction
 

 Nikki Tolt and Sheryl Schrager, counsel for plaintiff, Geraldine Good-stone, appeal after the trial court ordered both attorneys, jointly and severally, to pay $34,727 in attorney fees to defendants Southwest Airlines Co.,
 
 *408
 
 Burbank Air Service, Inc., and Industrial Electric Vehicles, formerly known as Nordskog Electric Vehicle (Nordco), as sanctions pursuant to Code of Civil Procedure section 128.7
 
 [1]
 
 and local court rules promulgated under the authority of the Trial Court Delay Reduction Act of 1986. (Gov. Code, § 68600 et seq.) The sanctions were awarded after the trial court determined the attorneys, Ms. Tolt and Ms. Schrager, had engaged in “a calculated and concerted effort to violate both the spirit and the letter of delay reduction rules and to cause needless inconvenience, expense and harassment to the Defendants.” We conclude that although substantial evidence may support the conclusion that the conduct of Ms. Tolt and Ms. Schrager was frivolous and undertaken for improper purposes, the “safe harbor” provisions of section 128.7, subdivision (c)(1) preclude the imposition of sanctions under that provision of law. However, in the unpublished portion of this opinion, we determine the trial court did not abuse its discretion when it imposed sanctions pursuant to the delay reduction rules of the Los Angeles Superior Court and section 575.2.
 
 [2]
 
 We affirm.
 

 II. Background
 

 On January 18, 1995, plaintiff filed a complaint in the North Central District of the Los Angeles County Superior Court in Glendale for personal injury against Southwest Airlines and Doe defendants in which she alleged they were responsible for injuries incurred while she was descending a stairway at Burbank Airport. At the time the complaint was filed Ms. Tolt was the attorney of record. A notice to counsel of record stated: “Your case has been assigned to the Trial Delay Reduction Program in Los Angeles County Superior Court. It is your responsibility as an attorney to immediately familiarize yourself with the detailed provision of Chapter 7, Los Angeles County Superior Court Rules. A reading of this notice does not relieve you of the responsibility to become intimately familiar with the requirements of these rules. The following critical provisions are summarized for your assistance in avoiding immediate and severe rule violations.” The complaint indicated the case was assigned to Judge S. James Otero for a status conference in Department North Central E on August 23, 1995.
 

 
 *409
 
 Southwest answered the complaint on April 20, 1995. On June 13, 1995, in written responses to plaintiff’s special interrogatories propounded on May 9, 1995, Southwest identified Nordco as the manufacturer of the stairway and Burbank Air Service, Inc., as the entity responsible for its maintenance.
 

 On August 23, 1995, counsel for plaintiff and Southwest appeared before Judge Otero at the scheduled status conference. Judge Otero scheduled a mandatory settlement conference for October 18, 1995, and a trial for November 6, 1995, both of which were to occur in Department E. On August 29, 1995, Southwest served a demand for the exchange of expert information pursuant to section 2034 on plaintiff. The exchange was to occur on or before September 18, 1995. No designation of expert witnesses by plaintiff was received by Southwest. Southwest sent no expert witness information by the deadline.
 

 On October 6, 1995, Ms. Schrager associated with Ms. Tolt as plaintiff’s counsel. At the mandatory settlement conference on October 18, 1995, Judge Otero met in chambers with counsel for plaintiff and Southwest. Judge Otero then met with plaintiff and her counsel alone. At the hearing, Ms. Schrager delivered by hand to Southwest’s counsel a reply to Southwest’s opposition to plaintiff’s motion for a protective order. The proof of service for the reply was signed by Ms. Schrager and showed the personal service was executed on October 18, 1995, in Glendale.
 

 Because the matter did not settle, a final status conference was scheduled for October 30, 1995 before Judge Otero. In the hallway, plaintiff objected to Southwest’s intended expert witness, Dr. Sew Hoy. Defense counsel, Mary E. Gram, advised Ms. Schrager that plaintiff had no right to object to Southwest’s presentation of expert testimony. Ms. Gram explained this was because plaintiff had not timely designated experts in response to Southwest’s demand for exchange. Ms. Gram advised Ms. Schrager that Southwest had not received a designation from plaintiff and asked for a copy of the one that had been prepared. Ms. Schrager searched her file but was unable to produce an expert witness designation.
 

 On November 3, 1995, three days before the scheduled trial date of November 6, 1995, the trial court held hearings on motions
 
 in limine.
 
 Plaintiff moved to exclude any of Southwest’s expert witnesses. The ground for the motion was that Southwest had never served an expert witness designation. At that time, Ms. Schrager handed to Southwest’s counsel an expert witness and accompanying declaration signed by Ms. Tolt. Ms. Schrager represented that plaintiff’s expert witness designation had been served on September 18, 1995, pursuant to the attached proof of service.
 
 *410
 
 Plaintiff also filed an objection to Southwest’s stated intent to offer an expert witnesses at trial. Southwest’s counsel had never received the expert designation and claimed the proof of service had been backdated based upon the fact that the proof of service indicates it was mailed and “[ejxecuted on September 18, 1995 at Beverly Hills,” but also contains the terms “By Personal Service” “Executed on October 18, 1995, at Glendale.” This was the same date that Ms. Schrager had personally served a reply on Southwest’s counsel at the mandatory settlement conference in Glendale.
 

 On the same date, plaintiff filed an election to arbitrate, a request for arbitration, and two motions to disqualify Judge Otero as the trial judge. The peremptory challenge was deemed untimely and denied. Judge Otero determined the plaintiff had received notice in January 1995 that the case was assigned to him for all purposes, who sat in a direct calendar courtroom. When plaintiff’s counsel indicated that a writ of mandate would be sought on the issue, the trial court ordered the jury panel for 1:30 p.m. on November 6, 1996, rather than at 9 a.m. which was the originally scheduled time.
 

 On November 6, 1995, plaintiff filed with this division a petition for writ of mandamus which sought to have Judge Otero vacate the order disallowing her peremptory challenge under section 170.6. The ground for the petition was that the first time plaintiff was informed Judge Otero would try the case was at the final status conference on October 30, 1995. Further, at that time plaintiff alleged that no mention was made that Judge Otero was assigned for all purposes. Plaintiff assumed that Judge Otero was the presiding judge. This division issued a temporary stay “[p]ending a determination on the merits” of plaintiff’s petition, but did “not preclude the trial from immediately proceeding before a judge other than Judge S. James Otero.”
 
 (Gold-stone
 
 v.
 
 Superior Court
 
 (Nov. 6, 1995) B097096 [nonpub. order].) However, while obtaining the stay, Ms. Schrager failed to report for trial at 1:30 p.m. Because she did not advise Judge Otero of her actions, the trial court, counsel for Southwest, and 30 prospective jurors were kept waiting until Ms. Schrager appeared at 3:30 p.m. Judge Otero indicated he was “close to sanctioning” counsel because she kept the jurors waiting all afternoon and did not have the courtesy to call the court and advise it of what was happening. Judge Otero ordered the matter transferred to Judge William McVittie in Pomona. Trial was scheduled to go forward on the next day, November 7, 1995.
 

 On November 6, 1995, plaintiff filed two amendments to the complaint naming Burbank Air Service, Inc., and Nordco as “DOE1” and “DOE 2” respectively. On November 7, 1995, when the parties appeared before Judge McVittie in Pomona, the attorneys met in chambers with him, together and
 
 *411
 
 separately. Ms. Schrager advised Judge McVittie in private that she had filed the two amendments to add fictitiously named defendants the preceding day. The private meeting with Judge McVittie was pursuant to the parties’ agreement. There is no evidence and no party asserts the ex parte communication was an unconsented to improper meeting between the court and counsel for one side of the litigation. Judge McVittie subsequently stated that when the issue was raised, he advised Ms. Schrager that she would have to obtain the court’s permission from the law and motion court before serving any of the fictitiously named defendants. In a later declaration, Ms. Schrager denied Judge McVittie told her to obtain permission from the law and motion court. Ms. Schrager concealed the filing of the amendments from Burbank’s counsel on November 6 and 7, 1995.
 

 Judge McVittie also overruled plaintiff’s objection to Southwest calling an opinion witness at trial and concluded neither side had designated experts, therefore, both parties could present such testimony. The parties then stipulated to unilateral binding arbitration on November 22, 1995. In exchange for Southwest’s agreement to pay the full cost of the arbitrator’s fee, it would be the only party who could request trial de novo. On November 14, 1995, Southwest sent a nonrefundable check in the amount of $1,200 to the arbitrator, retired Judge Burton Bach.
 

 Prior to the scheduled arbitration date, plaintiff served Burbank Air Service, Inc., on November 16, 1995, and Nordco on November 17, 1995. On November 17, 1995, 10 days after they were filed, Southwest learned of the amendments for the first time. This occurred when Burbank’s counsel contacted Southwest’s attorney.
 

 On November 21, 1995, Southwest’s counsel appeared before Judge Robert Dukes in Pomona to apply ex parte for an order dismissing the amendment naming Nordco and for sanctions. Southwest also joined Burbank Air Service, Inc.’s ex parte application to quash service of process, for dismissal with prejudice, and for sanctions. After learning that plaintiff had advised Judge McVittie of the amendments adding the fictitiously named defendants on November 7, 1995, but had said nothing to Southwest’s counsel about filing them “through inadvertence and distraction”; Judge Dukes ordered the applications transferred to Judge McVittie for a hearing the following morning. In so doing, the trial judge told Ms. Schrager: “Counsel, what you have done flies directly in the face of delay reduction, in the face of everything that I, in my experience as both a lawyer and a judge, have seen in any type of civil action that is proceeding to trial, particularly when on November 7th matters had been ruled upon, motions in limine had been ruled upon, and the matter was proceeding to a jury trial at that time
 
 *412
 
 without any, any motion to either sever or to alert the court that there were still defendants that you intended to serve.” The court subsequently stated: “Counsel, it is clear to me, but for the statement of counsel here that there was some implicit secret, unknown understanding by Judge McVittie, I was prepared to rule upon this at this instant. I think this was atrocious . . . . [¶] I have never seen such a flagrant disregard for both the court rules and delay reduction rules as what has been place here before me.”
 

 The next morning, on November 22, 1995, counsel for plaintiff and Southwest appeared before Judge McVittie. Judge McVittie called all counsel into his chambers to discuss the matter and urged the parties to agree to a voluntary dismissal of both Burbank Air Service, Inc., and Nordco so that it would not be necessary to rule on the ex parte applications. After counsel were unable to agree upon the voluntary dismissal of the fictitiously named defendants, Judge McVittie went on the record. Judge McVittie agreed that Ms. Schrager had mentioned she had filed the amendments, but he told her that given the late date, she would have to seek approval of the law and motion judge before adding fictitiously named defendants to an action that was ready to begin trial. The court further reminded plaintiff that Los Angeles Superior Court Rules, rule 7.78(a) required that all complaints be served within 60 days after filing. After argument, the trial judge: granted the motions to quash; dismissed both Burbank and Nordco with prejudice; ordered the arbitration to proceed as scheduled; and set a hearing on the motions for sanctions on February 23, 1996. Nordco was not a party to the November 22, 1995, proceedings. The motion to dismiss the action with prejudice was brought by Southwest. As will be noted,
 
 post,
 
 Nordco’s attorney was never apprised of the dismissal proceedings of November 22, 1995, until after Christmas of that year. The arbitration, which was held on November 22, 1995, resulted in an award in favor of Southwest after the arbitrator concluded plaintiff had failed to prove that a dangerous or defective condition existed on the stairs leading from the airplane. The arbitrator further concluded that Southwest did not have notice of any such condition.
 

 On December 22, 1995, Southwest’s counsel was contacted by an attorney representing Nordco. As noted previously, Nordco’s counsel was unaware of the prior November 22, 1995, dismissal order. The attorney for Nordco stated that his client had been served with the amended complaint naming it as a fictitiously named defendant. Plaintiff’s counsel had failed to return any repeated telephone calls from Nordco’s attorney. Hence, Nordco’s counsel answered the complaint and filed a cross-complaint against Southwest on December 21, 1995. On December 29, 1995, Ms. Gram, Southwest’s attorney, sent a letter by facsimile transmission to Ms. Schrager demanding immediate action to remedy the problem caused by the failure to notify
 
 *413
 
 Nordco or its counsel that the action had been dismissed. On January 2, 1996, Nordco’s attorney informed Southwest’s legal representative that plaintiff’s counsel would not cooperate in resolving any problem caused by the service of the amended complaint, which had been previously dismissed on November 11, 1996.
 

 On January 9, 1996, Southwest served on plaintiff’s counsel a motion for sanctions in which it requested $15,795 in attorney fees and costs incurred by it: in bringing the dismissal motion (31 hours); as a result of the improper filing of the section 170.6 challenge (19 hours); in connection with the alleged fraudulent proof of service on the expert witness designation (23 hours); and in regards to the improper filing of the amendment (41 hours). Southwest filed the motion on February 8, 1996. On the same date, Burbank Air Service, Inc., and Nordco filed motions for sanctions based on the filing of the amendments naming them as defendants. Burbank served its motion on February 8, 1996. Nordco’s sanctions motion was apparently served at the same time.
 

 On January 25, 1996, Southwest filed a petition to confirm the arbitration award. On January 29, 1996, plaintiff appealed the order quashing service and dismissing Burbank Air Service, Inc., and Nordco with prejudice.
 
 [3]
 
 On February 8, 1996, plaintiff filed a response to the petition to confirm the arbitration award. Plaintiff sought an order vacating the award.
 

 On February 20, 1996, plaintiff and her attorneys filed separate oppositions to each of defendants’ sanctions motion. Plaintiff opposed the Nordco and Burbank motions on the grounds that Ms. Schrager had a good faith belief that it was proper to file the amendments. Also, plaintiff argued that at no time had she sought a continuance or caused other delay because of the amendments. Plaintiff also objected to the sanctions motion on the ground no safe harbor had ever been given to counsel in connection with the amendments. Plaintiff opposed the Southwest motion on the grounds the proof of service was not backdated but was a computer word processing error and the expert witness designation was in fact served on September 18, 1995. In support of the opposition, Ms. Tolt declared that she had created the proof of service for plaintiff’s expert designation by copying a proof of service from a case entitled Stafford v. County of Los Angeles which existed on a computer forms disk and already contained the line “Executed on October 18 . . .at Glendale.” She changed the dates from 1993 to 1995 globally on the computer. She used the Stafford proof of service to draft the expert witness designation in this case. Also, she used the proof of service
 
 *414
 
 for an expert witness designation in a case called “Shrum.” Ms. Tolt did not attach a copy of the Shrum proof of service. However, she declared that it contained the same “Executed on October 18 . . .at Glendale” line that was in the proof of service in the case at bench. At some point, plaintiff filed a peremptory disqualification motion as to Judge McVittie pursuant to section 170.6. As a result, the hearing on the various motions had to be continued. The continuance of the hearing for the various motions occurred on March 7, 1996.
 

 On March 19, 1996, Southwest filed a declaration of Lyn Woodward, an attorney in the Stafford case, which attached a copy of the actual proof of service for the designation of experts that Ms. Tolt had served in that case. The Stafford proof of service did not show “Executed on October 18 . . .at Glendale” as Ms. Tolt had declared under oath in her opposition to the sanctions request.
 

 On March 21, 1996, the hearing on the arbitration and sanction matters was held before Judge Theodore D. Piatt after plaintiff filed a peremptory challenge against Judge McVittie. We refer to Judge Piatt as the trial court, since it is his rulings we ultimately affirm. After hearing oral arguments, the trial court took the matter under submission. The trial court subsequently requested that Judge Otero have input on the “direct calendar/master calendar” confusion. Judge Otero issued a minute order which stated: “Since January 01, 1992, all cases excluding Probate, Family Law and Restraining Orders originating in the North Central District of the Superior Court are assigned to the Trial Delay Reduction Program, and pursuant to the direction of the Supervising Judges of the District since that date, each Court in the District is designated as a Direct calendar court and cases are assigned to an Individual Judge for all purposes at the time the complaint is filed and case number is issued. [¶] In accordance with above policy, the Clerk stamps the complaint and copies and Notice with specific reference for all purposes assigned to the Individual Judge, [¶] Additionally, in accordance with above policy, as of the year 1993, there has been a notice posted outside each public entry door of each courtroom with information regarding the direct calendar system being utilized in this District. [¶] The notice posted at entry door of Department NC E reads as follows: ‘Notice to All Counsel Dept. ‘E’ Is a Direct Calendar Court All Matters in This Court Are Assigned to Judge S. James Otero for All Purposes.’ ” After receiving the minute order, Judge Piatt provided the parties with an opportunity for further briefing or hearing on the issue of the “direct calendar/ master calendar” confusion.
 

 Plaintiff filed a brief in which it was argued that there was confusion because no notice of case assignment was ever given. Ms. Tolt declared that
 
 *415
 
 she was never advised that Judge Otero was acting in capacity other than supervising judge. After researching the issue, she remained convinced that Glendale was operating as a master calendar system whereby cases are assigned on the day of trial. In support of the theory, she cited to another case she was handling which had the same stamp as in the case at bench with Judge Otero’s signature. However, she had not appeared before Judge Otero but had all matters heard by Judge David Schacter in department A in Burbank.
 

 On April 30, 1996, Southwest filed a supplemental memorandum in which it requested an additional $2,215 for attorney fees and costs incurred with regard to the sanctions motion and due to plaintiff’s failure to provide a copy of the Shram proof of service which was referred to in the opposition. Southwest also attached the actual proof of service for the designation of experts which had been served in the Shram case. The proof of service like the Stafford case did not show, “Executed on October 18 . . .at Glendale” as Ms. Tolt had indicated in her under oath declaration.
 

 On May 2, 1996, the trial court heard additional arguments and allowed plaintiff’s attorneys to file additional papers on the issue of the backdated proofs of service. On May 20, 1996, the trial court issued an order awarding sanctions against Ms. Tolt and Ms. Schrager, jointly and severally, in the sum of $18,101 for Southwest, $14,787 for Burbank Air Service, Inc., and $1,839 for Nordco. The notice of ruling states in part: “These motions and responses have generated hundreds of pages of points and authorities, declarations and other exhibits. The Court will attempt to provide an abridged version of this complex misfortune and still give a meaningful notice of ruling for purposes of appeal or investigation by the State Bar or the District Attorney’s Office, if those entities seek to institute other proceedings. This Court recognizes the consequences of this Ruling are serious. That was the primary reason for securing the minute order from Department NC-E. [¶] This Court, since May 2, 1996, has reviewed and reconsidered carefully the multitude of documents referred to above. Upon the completion of this review, this Court is left with only one rational conclusion: The conduct alleged herein was understated by Judge Dukes with reference to the transcript of November 21, 1995, when Burbank Air Services appeared ex parte to seek dismissal of late filed Doe amendments and to quash service. This Court must find a calculated and concerted effort to violate both the spirit and the letter of delay reduction rales and to cause needless inconvenience, expense and harassment to the Defendants, [¶] The Court will address each purported violation. In doing so, the Court states at the outset that the sum total of the actions of counsel for Plaintiff on all the issues presented render their declarations not credible, and consequently, the explanations for their
 
 *416
 
 conduct contained therein are rejected. [¶] Moving parties, on the other hand, have provided argument and documentary and other admissible evidence which establishes an analysis of the alleged misconduct. Taken as a whole, it provides a rational interpretation of the events in question; particularly, in contrast to the convoluted explanations offered by Plaintiff’s counsel.”
 

 On June 5, 1996, the trial court issued a minute order which clarified the ruling. On July 16, 1996, the attorneys appealed the sanction orders. The order was reduced to judgment. Notice of entry of judgment was filed on August 1, 1996, and the attorneys filed a notice of appeal from the judgment. On June 24, 1997, plaintiff filed a notice of abandonment with regard to an appeal from the trial court’s order confirming the arbitration award.
 

 III. Discussion
 

 At the outset, we address whether sanctions could be imposed pursuant to section 128.7. We conclude section 128.7 sanctions may not be imposed in this case. By the time the first sanctions motion was filed on January 9, 1996, with the exception of the petition to confirm the arbitration award, a proceeding during which no frivolous contentions were presented, the action was concluded. The fictitious defendant amendments had been dismissed on November 22, 1995. As will be noted, none of the sanctions motions were served in compliance with the safe harbor provisions of section 128.7, subdivision (c)(1). Section 128.7 states in its entirety: “(a) Every pleading, petition, written notice of motion, or other similar paper shall be signed by at least one attorney of record in the attorney’s individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer’s address and telephone number, if any. Except when otherwise provided by law, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party. [¶] (b) By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person’s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met: [¶] (1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. [¶] (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified,
 
 *417
 
 are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. [¶] (4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief. [¶] (c) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence. [¶] (1) A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 30 days after service of the motion, or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney’s fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees. [¶] (2) On its own motion, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b), unless, within 30 days of service of the order to show cause, the challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected, [¶] (d) A sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated. Subject to the limitations in paragraphs (1) and (2), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney’s fees and other expenses incurred as a direct result of the violation, [¶] (1) Monetary sanctions may not be awarded against a represented party for a violation of paragraph (2) of subdivision (b). [¶] (2) Monetary sanctions may not be awarded on the court’s motion unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned. [¶] (e) When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed. [^] (f) In addition to any award pursuant to this section for conduct described in subdivision (b), the court may assess punitive damages against the plaintiff
 
 *418
 
 upon a determination by the court that the plaintiff’s action was an action maintained by a person convicted of a felony against the person’s victim, or the victim’s heirs, relatives, estate, or personal representative, for injuries arising from the acts for which the person was convicted of a felony, and that the plaintiff is guilty of fraud, oppression, or malice in maintaining the action, [¶] (g) This section shall not apply to disclosures and discovery requests, responses, objections, and motions, [¶] (h) A motion for sanctions brought by a party or a party’s attorney primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, shall itself be subject to a motion for sanctions. It is the intent of the Legislature that courts shall vigorously use its sanctions authority to deter such improper conduct or comparable conduct by others similarly situated, [¶] (i) This section shall apply to a complaint or petition filed on or after January 1, 1995, and any other pleading, written notice of motion, or other similar paper filed in such a matter, [¶] (j) This section shall remain in effect only until January 1, 1999, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 1999, deletes or extends that date.”
 

 At issue in this case is the application of the so-called safe harbor provisions of section 128.7, subdivision (c)(1) which require a sanctions motion be served at least 30 days prior to its filing so as to give the responding party or counsel the opportunity to withdraw “the challenged paper, claim, defense, contention, allegation, or denial.” In this case, all of the sanctions motions were filed on January 9, 1996, after the November 22, 1997, dismissal of the fictitious defendant amendments. The trial court concluded that the safe harbor provisions were irrelevant for the following reasons: “As a result of seeking the writ, Judge Otero transferred this case to Judge William McVittie for further trial proceedings on November 6, 1995. On November 7, the Doe amendments were filed. The actions on November 6 and 7 so infected the proceedings as to render the Safe Harbor provisions of Section 128.7(c)(1) meaningless. The Safe Harbor provisions are designed to permit withdrawal or correction. Not only have Plaintiff’s counsel failed to attempt to withdraw, they have continued to defend all of their actions to this day. Urging denials of these motions for sanctions based upon the provisions of . . . [section 128.7 subdivision (c)(1)] and at the same time arguing and defending the validity of the conduct proscribed by [section 128.7, subdivision (b)] is disingenuous. Finally, the Court notes that in November 1995, Judge William McVittie set a hearing date for sanctions for February 23, 1996. Southwest, however, did not file this motion until February 8, 1996, nearly two months later.” We conclude for reasons that will be stated no sanctions could be imposed under section 128.7. This was because the sanctions motions had to have been served 30 days prior to their
 
 *419
 
 filing so as to give plaintiff or her counsel an opportunity to correct the errors at issue.
 

 Section 128.7 was adopted as part of an effort to largely bring California sanctions practice into line with rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.).
 
 [4]
 
 Rule 11 states in its entirety: “(a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney’s individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer’s address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party, [¶] (b) Representations to Court. By presenting to the court (whether by signing, filing,, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person’s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,— [¶] (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; [¶] (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [¶] (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and [¶] (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief, [¶] (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation, [¶] (1) How Initiated, [¶] (A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys’
 
 *420
 
 fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees. [¶] (B) On Court’s Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto. [¶] (2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys’ fees and other expenses incurred as a direct result of the violation, [¶] (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2). [¶] (B) Monetary sanctions may not be awarded on the court’s initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned. [¶] (3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed, [¶] (d) Inapplicability to Discovery. Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37.”
 

 The Judicial Conference Advisory Committee Notes for the 1993 amendment to rule 11 state in relevant part: “The rule provides that requests for sanctions must be made as a separate motion, i.e., not simply included as an additional prayer for relief contained in another motion. The motion for sanctions is not, however, to be filed until at least 21 days (or such other period as the court may set) after being served. If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of ‘safe harbor’ against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party’s motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions. [¶] To stress the seriousness of a motion for
 
 *421
 
 sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the ‘safe harbor’ period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.” (Judicial Council Advisory Com. notes, 1993 amends, to rule 11, 28 U.S.C.A. (1997 pocket supp.) foll, rule 11, p. 247.)
 

 Federal court decisions are consistent in their application of rule 11. Federal courts require service of the sanctions motion 21 days prior to its filing so as to give the responding party or counsel an opportunity to withdraw the “challenged paper, claim, defense, contention, allegation, or denial.” (Rule 11(c)(1)(A).) The application of rule 11 was explained by the Sixth Circuit Court of Appeals in
 
 Morganroth & Morganroth
 
 v.
 
 DeLorean
 
 (6th Cir. 1997) 123 F.3d 374, 384 as follows: “Following the jury verdict, DeLorean moved for sanctions pursuant to Fed.R.Civ.P. Rule 11 on the ground that Morganroth’s RICO cause of action was frivolous. The district court denied the motion. We need not consider the merits of DeLorean’s claim for sanctions, because he did not file it in a timely fashion in accordance with Rule ll’s safe harbor provision. [¶] Rule 11(c)(1)(A) provides: ‘A motion for sanctions under this rule .... shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged . . . claim ... is not withdrawn or appropriately corrected.’ The 1993 advisory committee notes clarify that ‘[g]iven the “safe harbor” provisions [of subsection (c)(1)(A)], a party cannot delay serving its Rule 11 motion until conclusion of the case. . . .’ This is clearly in keeping with the objective of the safe harbor provision to provide a party with the opportunity to withdraw a frivolous claim prior to the imposition of sanctions, [¶] DeLorean argues that Rule 11 sanctions are warranted in this case despite Rule ll’s safe harbor provision because a RICO suit against a former client is so clearly frivolous that any attorney filing such a suit should anticipate Rule 11 sanctions. In addition to its questionable premise, De-Lorean’s argument demonstrates a failure to understand the purpose of the safe-harbor provision.
 
 Any
 
 claim subject to Rule 11 sanctions is so frivolous that a lawyer should know better than to file it. The safe harbor provision nevertheless requires opposing counsel to put the filing lawyer on notice that he or she may be sanctioned and to give the filing lawyer an opportunity to reconsider. Rule 11 does not distinguish degrees of frivolity.” (Italics omitted.) All federal Courts of Appeals decisions which have discussed the issue are in accord that: The sanctions motion must be served at least 21 days before it is filed; the responding party or counsel thereby are given an opportunity to rectify the improper conduct and if no correction occurs during the 21-day safe harbor period, the sanctions motion may then be filed.
 
 (Union Planters Bank
 
 v.
 
 L & J Development Co., Inc.
 
 (6th Cir. 1997)
 
 *422
 
 115 F.3d 378, 385, fn. 3 [“By serving the sanctions motion on the Jemisons in August and then waiting until November to file it with the court, Sunburst fully complied with Rule ll’s ‘safe harbor’ procedural prerequisite.”];
 
 Aerotech, Inc.
 
 v.
 
 Estes
 
 (10th Cir. 1997) 110 F.3d 1523, 1528 [“Because Vernon Estes did not move for Rule 11 sanctions until after AeroTech had moved to dismiss its claims against him, we agree with the magistrate’s conclusion that Rule ll’s cure provision prevents Vernon Estes from seeking sanctions.”];
 
 Elliott
 
 v.
 
 Tilton
 
 (5th Cir. 1995) 64 F.3d 213, 216 [“The ‘safe harbor’ provision added to Rule 11 contemplates such service to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention. The plain language of the rule indicates that this notice and opportunity prior to filing is mandatory.”];
 
 Ridder
 
 v.
 
 City of Springfield
 
 (6th Cir. 1997) 109 F.3d 288, 295 [“Given the ‘safe harbor’ provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).”];
 
 Hadges
 
 v.
 
 Yonkers Racing Corp.
 
 (2d Cir. 1995) 48 F.3d 1320, 1327-1328 [“[T]he 1993 amendment establishes a ‘safe harbor’ of 21 days during which factual or legal contentions may be withdrawn or appropriately corrected in order to avoid sanction.”];
 
 Kirk Capital Corp.
 
 v.
 
 Bailey
 
 (8th Cir. 1994) 16 F.3d 1485, 1488 [“And, since the defendants did not serve their Motion for Sanctions on the plaintiffs, they did not give them the .21 day ‘grace’ period within which to voluntarily dismiss their Complaint. Under the new rule, the Motion for Sanctions could not have been
 
 ‘filed
 
 with or
 
 presented
 
 to the court
 
 unless,
 
 within 21 days after service of the motion ... the challenged . . . claim ... is not withdrawn . . .’” (italics omitted.)].) Recent district court decisions have also strictly enforced the “safe harbor” requirement of rule 11.
 
 (Powell
 
 v.
 
 Squire, Sanders & Dempsey
 
 (S.D. Ohio 1998) 990 F.Supp. 541, 543;
 
 Davis
 
 v.
 
 Goode
 
 (E.D.N.Y. 1998) 995 F.Supp. 82, 92;
 
 Tompkins
 
 v.
 
 Cyr
 
 (N.D. Tex. 1998) 995 F.Supp. 689, 692;
 
 Tornheim
 
 v.
 
 Federal Home Mortgage Corp.
 
 (S.D.N.Y. 1997) 988 F.Supp. 279, 288;
 
 Szoke
 
 v.
 
 Carter
 
 (S.D.N.Y. 1997) 974 F.Supp. 360, 370;
 
 McCoy
 
 v.
 
 West
 
 (D.Colo. 1997) 965 F.Supp. 34, 35;
 
 Bowler
 
 v.
 
 U.S. I.N.S.
 
 (S.D.N.Y. 1995) 901 F.Supp. 597, 604.)
 

 The
 
 effect of
 
 federal law is important in terms of applying section 128.7 which contains virtually the same safe harbor provisions as rule 11. This is because the Legislature specifically intended to adopt the rule 11 model with its “safe harbor” provisions.
 
 [5]
 
 A report prepared for the Assembly Committee on Judiciary in connection with Assembly Bill No. 3594 stated: “Enacts section 128.7 to essentially, replicate the recently revised Federal Rule 11. It
 
 *423
 
 provides the following: [¶] .... d) Motions for sanctions shall be made separately, but in no event sooner that 21 days after service of the allegedly noncomplying pleading.” (Assem. Com. on Judiciary, 3d reading analysis of Assem. Bill No. 3594 (1993-1994 Reg. Sess.) as amended May 23, 1994, pp. 1-2; see also Assem. Com. on Judiciary, Analysis of Assem. Bill No 3594 (1993-1994 Reg. Sess.) as amended Apr. 26,1994 (hg. May 11, 1994) p. 2).) The report prepared for the Senate Committee on Judiciary stated: “This bill would limit the application of Code of Civil Procedure section 128.5 to cases filed on or before December 31, 1994, would repeal section 447, and would apply revised Federal Rule 11 statewide to cases filed on or after January 1, 1995.” (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3594 (1993-1994 Reg. Sess.) as amended May 23, 1994, p. 3.) Further, the Senate Committee on Judiciary report indicated that the “Notes of the Advisory Committee” for rule 11 were adopted as a statement of legislative intent for Assembly Bill No. 3594.
 
 (Id.
 
 at p. 5.) The same analysis appeared in a subsequent Senate Committee on Judiciary report. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3594 (1993-1994 Reg. Sess.) Aug. 23, 1994, p. 2.) When Assembly Bill No. 3594 was returned to the lower house for concurrence in Senate amendments, references were made once again to rule 11. (Rep. prepared for floor action on Assem. Bill No. 3594 (1993-1994 Reg. Sess.) Aug. 31, 1994, p. 1.) All legislative committee reports we have read and referred to in this opinion advert to the requirement that the sanctions motion be served before it is filed so as to give the alleged offending party the opportunity to withdraw the “challenged paper, claim, defense, contention, allegation, or denial” (§ 128.7, subd. (c)(1)) during the “safe harbor” period.
 

 Our obligation in applying section 128.7 is to carry out the Legislature’s intent.
 
 (Hsu
 
 v.
 
 Abbara
 
 (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804];
 
 Viking Pools, Inc.
 
 v.
 
 Maloney
 
 (1989) 48 Cal.3d 602, 606 [257 Cal.Rptr. 320, 770 P.2d 732].) The words of a statute are the surest indication of the Legislature’s intent.
 
 (Pacific Gas & Electric Co.
 
 v.
 
 County of Stanislaus
 
 (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291];
 
 Hsu
 
 v.
 
 Abbara, supra, 9
 
 Cal.4th at p. 871.) In that respect, the legislative language could not be clearer; the sanctions motion must be served 30 days before it is filed so as to allow time for correction of the offending conduct—that never happened in this case. (§ 128.7, subd. (c)(1).) Further, in applying a statute, it may be appropriate to look to its legislative history.
 
 (Pacific Gas & Electric Co.
 
 v.
 
 County of Stanislaus, supra,
 
 16 Cal.4th at p. 1152;
 
 California Teachers Assn.
 
 v.
 
 Governing Bd. of Rialto Unified School Dist.
 
 (1997) 14 Cal.4th 627, 659 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) The committee reports make it clear the Legislature fully intended to have California sanctions practice be brought into conformity
 
 *424
 
 with rule 11 including the use of the safe harbor provisions designed to allow a “challenged paper, claim, defense, contention, allegation, or denial” (§ 128.7, subd. (c)(1)) to be withdrawn.
 

 Defendants make two additional arguments that warrant comment. They contend the trial court pursuant to section 128.7, subdivision (c)(1) in issuing the sanctions order reduced that time for giving notice of the intent to seek monetary relief because of Ms. Tolt’s and Ms. Schrager’s misconduct. Defendants rely on the language in section 128.7, subdivision (c)(1) which states: “Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 30 days after service of the motion, or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.” Defendants argue that this gave the trial court the authority to disregard the safe harbor requirement in its entirety. However, federal authority construing rule 11 does not support this contention. Further, no California statutory language or legislative committee reports support the proposition that a trial judge has the authority to disregard the safe harbor requirement. Finally, in the present case, the trial court never purported to act pursuant to section 128.7, subdivision (c)(1). Because no section 128.7 sanctions motion was served so as to allow Ms. Tolt or Ms. Schrager any period of time to withdraw any “challenged paper, claim, defense, contention, allegation, or denial” (§ 128.7, subd. (c)(1)), that provision of law may not be lawfully applied to this case.
 

 The final argument of defendants that warrants discussion is as follows. Defendants reason that the contentions presented in response to the sanctions motions were frivolous. Hence, defendants reason sanctions were recoverable pursuant to section 128.7. However, the sanctions motions related to conduct that was already concluded. No sanctions motions were served which complied with the safe harbor provisions of section 128.7, subdivisions (c)(1). We do not address the issue of what may occur when frivolous justifications are offered in response to an otherwise properly served section 128.7 sanctions motion which allows a “challenged paper, claim, defense, contention, allegation, or denial” (§ 128.7, subd. (c)(1)) to be withdrawn. Here, there was complete noncompliance with the safe harbor provisions of section 128.7, subdivision (c)(1). Under those circumstances, no section 128.7 sanctions may be imposed. . . . . . . . . . . . . . . . . . . . . . . . .
 
 *
 

 
 *425
 
 IV. Disposition
 

 The judgment is affirmed. Defendants, Southwest Airline Co., Burbank Air Service, Inc., and Nordskog Electric Vehicle, shall each recover their costs on appeal from Nikki Tolt and Sheryl Schrager, jointly and severally.
 

 Armstrong, J., and Godoy Perez, J., concurred.
 

 A petition for a rehearing was denied May 8, 1998.
 

 [1]
 

 All further statutory references are to the Code of Civil Procedure unless otherwise indicated.
 

 [2]
 

 Section 575.2, subdivision (a) states: “(a) Local rules promulgated pursuant to Section 575.1 may provide that if any counsel, a party represented by counsel, or a party if in pro se, fails to comply with any of the requirements thereof, the court on motion of a party or on its own motion may strike out all or any part of any pleading of that party, or, dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party, or impose other penalties of a lesser nature as otherwise provided by law, and may order that party or his or her counsel to pay to the moving party the reasonable expenses in making the motion, including reasonable attorney fees.”
 

 [3]
 

 That appeal remains pending because the superior court clerk failed to prepare the record in a timely fashion.
 

 [4]
 

 All future references to rule 11 are to rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.).
 

 [5]
 

 We do not suggest that the Legislature intended to adopt the rule 11 safe harbor provisions in their entirety. In rule 11, the safe harbor period is 21 days. (Rule 11(c)(1)(A).) Section 128.7, subdivision (c)(1) creates a 30-day safe harbor period.
 

 *
 

 See footnote,
 
 ante,
 
 page 406.