[No. A072765. First Dist., Div. Four. Apr. 23, 1997.]

ROBERT H. MURPHY et al., Plaintiffs, Cross-defendants and Appellants,
v.
YALE MATERIALS HANDLING CORPORATION et al., Defendants,
Cross-complainants and Respondents.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.A.1., A.2., A.3., and B.

COUNSEL

Timothy D. Murphy for Plaintiffs, Cross-defendants and Appellants.

Cooley Godward, Paul A. Renne, John W. Crittenden, Robert L. Eisenbach III, Anita F. Stork and Kristen C. Pedersen for Defendants, Cross-complainants and Respondents.

OPINION

POCHÉ, Acting P. J.—Plaintiffs, Robert H. Murphy, M.D. and Shirley S. Murphy, appeal from a judgment after trial to the court in favor of defendants, Yale Materials Handling Corporation and various other related business entities (hereafter collectively Yale), which held personal guaranties executed by the Murphys.

This case arose from the financial decline of a forklift dealership. Although the issues before us on this appeal are relatively uncomplicated, the commercial context and legal posture of the case require some explanation.

### I.  *Background*

Dr. and Mrs. Murphy were the majority shareholders of Bay Area Material Handling Inc. (Bay Area), a dealership for Yale brand forklifts. Bay Area

entered into various financing agreements to purchase inventory, some with Yale and its parent corporation and some with Yale's predecessor in interest, Heller Financial, Inc. In March 1987 Bay Area failed to remit some $200,000 owed to Yale and/or Heller for forklifts it had sold; Yale concluded Bay Area had thereby sold out of trust under the financing agreements. On April 16, 1987, Robert Murphy executed a $1 million personal guaranty of Bay Area's indebtedness in favor of Yale, and his wife executed an identical guaranty in the amount of $250,000.

In late 1988 Bay Area committed to greatly increase its Yale forklift inventory. This increase resulted in a debt of "nearly $5 million" owed by Bay Area to Yale entities. In October 1989 Yale again evidenced concern that Bay Area was selling out of trust. Finally, on June 21, 1991, Yale terminated Bay Area's dealership.

In August of 1991 Bay Area filed a complaint naming Yale as a defendant; in September Yale cross-complained naming Bay Area and the Murphys as cross-defendants. Yale's cross-complaint pleaded breach of the personal guaranties of the Murphys.

In mid-October 1991 Bay Area filed a voluntary chapter 11 (reorganization) bankruptcy petition. The bankruptcy case was converted into a chapter 7 (liquidation) case in September 1993, and in June 1994 the trustee of the bankruptcy estate entered into a settlement with Yale whereby the estate paid Yale $215,000 in exchange for a release of all Yale's claims against the Bay Area bankruptcy estate. That settlement was subsequently approved by the bankruptcy court.[1] In July 1994 the Murphys moved to compel Yale to produce a great number of documents; Yale responded by seeking a protective order. Yale prevailed and on appeal the Murphys contend that the trial court erred in denying them discovery.

In early 1995 Yale successfully moved for summary adjudication of the Murphys' second cause of action for rescission of the personal guaranties and on all nine of the Murphys' affirmative defenses to Yale's counterclaim. The Murphys then moved to amend and/or file a supplemental complaint seeking disgorgement of proceeds from, what they contended were, Yale's violations of the Unfair Business Practices Act. The motion was denied and the Murphys were sanctioned $350 under Code of Civil Procedure section 128.7.[2] These rulings were the subject of a notice of appeal filed in this court on May 30, 1995. Yale sought dismissal of the appeal (A070012) on the

---

[1] The Murphys have appealed approval of the settlement to the Ninth Circuit.

[2] Unless otherwise indicated all further statutory references are to the Code of Civil Procedure.

ground the orders were nonappealable, and the appeal was dismissed by an order of August 14, 1995. In their present appeal the Murphys contend that these trial court rulings were all erroneous.

In September 1995 a bench trial was had on Yale's counterclaim. In its statement of decision the trial court found that Yale was damaged in the amount of $928,856. On January 16, 1996, the court entered a second amended judgment for Yale in that amount on the guaranties, making the Murphys jointly and severally liable to Yale for postjudgment interest, attorney fees of $805,232.25 and costs of $91,571.08, as well as attorney fees and costs in enforcing the judgment and on appeal. From that judgment the Murphys have taken a timely appeal.

## II. *Discussion*

### A. *Pretrial Issues*

#### 1.-3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 4. *Sanctions*

In opposing the Murphys' motion to file a fourth amended complaint, Yale sought and received an award of sanctions in the amount of $350 under section 128.7. That section provides that by "presenting to the court . . . a pleading . . . an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . . [¶] (1) It is not being presented primarily for an improper purpose, . . . [¶] (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (§ 128.7, subd. (b)(1), (2).)

Finding the Murphys had no standing to assert Bay Area's claims, the trial court concluded the complaint lacked the legal support required by the section. The court also concluded sanctions were appropriate under section 128.7, subdivision (b)(3) providing " '[t]he allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.' " The court found the Murphys had not submitted evidentiary support for their allegations of employee raiding, customer

---

*See footnote, *ante*, page 619.

theft and misrepresentations of credit authority, but Yale had submitted evidence to the contrary.

On appeal the Murphys contend the trial court was without authority to award sanctions under section 128.7 because the section specifically provides: "This section shall apply to a complaint or petition filed on or after January 1, 1995, and any other pleading, written notice of motion, or other similar paper filed in such a matter." (§ 128.7, subd. (i).) The Murphys argue applying the section to them is impermissible because, although their motion to file an amended or supplemental complaint was made in March 1995, the section's applicability to them is determined by the August 1991 filing date of their original complaint. The Murphys are correct.

We base our interpretation of the applicability of section 128.7 both upon its plain meaning and upon its relationship to its companion section 128.5. Section 128.5, added in 1981, provides sanctions may be assessed against a party who pursues a frivolous or bad faith action. (Stats. 1981, ch. 762, § 1, p. 2968; see *Kane* v. *Hurley* (1994) 30 Cal.App.4th 859, 863 [35 Cal.Rptr.2d 809] [history of its enactment].) In 1994 the Legislature added section 128.7 at the same time it amended section 128.5. (Stats. 1994, ch. 1062, § 3.) By the 1994 amendment of section 128.5, that section which provides for the payment of sanctions for "bad-faith actions or tactics that are frivolous" was temporally limited to "actions or tactics [which] arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994." The statute provides that actions or tactics "include, but are not limited to, the making or opposing of motions or the filing and service of a complaint. . . ." (§ 128.5, subd. (b)(1).)

As part of the same bill by which it limited section 128.5 to pre-1995 cases, the Legislature added section 128.7, with its requirements of attorney certification of pleadings. Section 128.7 "shall apply to a complaint or petition filed on or after January 1, 1995, and any other pleading, written notice of motion, or other similar paper filed in such a matter." (§ 128.7, subd. (i).)

Section 128.7 represents an alternative approach to that offered by section 128.5 to the problem of sanctions for litigation that is frivolous or undertaken for an improper motive. Both substantively and procedurally the two sections differ from the other. However, the only issue before us is whether an amended or supplemental complaint which was offered after January 1, 1995, but in an action which was filed in August of 1991, can support an award of sanctions under section 128.7. While the language of section 128.7 applying the section "to a complaint or petition filed on or after January 1,

1995" might permit concluding an amended or supplemental complaint "presented" to the court after January 1, 1995, would be subject to its requirements, such a reading of the statute cannot be squared with the explicit language that section 128.5 controls actions or tactics which "arise from a complaint filed . . . before December 31, 1994." Our interpretation of a statute must be mindful both of the words used and of the legislative scheme of which it is a part. (*Pasadena Police Officers Assn.* v. *City of Pasadena* (1990) 51 Cal.3d 564, 575 [273 Cal.Rptr. 584, 797 P.2d 608].)

The trial court erred in awarding sanctions against the Murphys under section 128.7 for their motion to file a fourth amended and/or supplemental complaint.

### B. *Trial Issues**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *Disposition*

The order awarding sanctions of $350 under section 128.7 against the Murphys is reversed. The judgment in all other respects is affirmed. In the interests of justice respondents to have a full award of their attorney fees and costs on appeal.

Reardon, J., and Hanlon, J., concurred.

A petition for a rehearing was denied May 22, 1997, and appellants' petition for review by the Supreme Court was denied July 23, 1997.

---

*See footnote *ante*, page 619.