[No. G020962. Fourth Dist., Div. Three. Aug. 2, 1999.]

In re the Marriage of DAVID REESE and JOANNE GUY.
DAVID REESE, Respondent, v.
JOANNE GUY, Respondent;
PHILIP A. LEVY, Appellant.

## COUNSEL

O'Flaherty & Belgum, Robert M. Dato and Philip A. Levy for Appellant.

Nancy Bennett Bunn for Respondent David Reese.

No appearance for Respondent Joanne Guy.

## OPINION

**SEYMOUR, J.***—In this case we hold that when a motion for sanctions against a party and her attorney has been noticed under Code of Civil Procedure section 128.7,[1] the trial court may not impose sanctions under section 128.5. We reverse the order awarding sanctions against Joanne Guy and her attorney, Philip A. Levy.

This appeal arises from a 1988 petition for dissolution of the marriage of David Reese and Joanne Guy. A 1993 child custody order gave Reese primary physical custody of their son and allowed Guy visitation.

In June 1996, Reese's attorney, Nancy Bennett Bunn, filed an order to show cause (OSC) to modify the custody order. The motion was supported by declarations of Reese and his friend, Jeanine Veldhuis. Reese would later explain that either he or his brother had signed Veldhuis's name to the declaration after obtaining her approval of its contents. Veldhuis denied she had ever seen, signed, or authorized anyone else to sign a declaration on her behalf. When Levy indicated he would depose Veldhuis regarding her purported declaration, Bunn took the OSC off calendar. Reese subsequently obtained a restraining order against Veldhuis prohibiting her from telephoning him.

On July 10, 1996, Bunn refiled the OSC to modify the custody order. The new motion was supported by three declarations under penalty of perjury of David Reese. Reese's signature was followed by the initials, "N.B." Bunn would later explain that she had signed these declarations on Reese's behalf after reviewing their contents with him. The motion was also supported by the declaration under penalty of perjury of Janice Cua, another friend of Reese's. Bunn also signed this declaration with Cua's name followed by her initials. Bunn would later explain that this declaration was identical to one which had been filed with the court on an earlier motion. Cua had personally signed the original declaration and Bunn had simply made a new copy of it, signed Cua's name and filed it with the new motion. On August 1, Bunn took the second OSC off calendar.

On August 2, Guy filed a motion for monetary sanctions against Reese and Bunn under section 128.5 on the grounds they had filed false documents, inter alia, the Veldhuis, Reese and Cua declarations which had not been

---

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

signed by the declarants. She also claimed Reese had threatened Veldhuis when she disavowed the signature on her declaration.

Guy's motion for sanctions came on for hearing on August 29. The court, concerned about the gravity of the charges that false declarations had been filed, continued it for two months for a full evidentiary hearing. Guy filed an amended motion for sanctions adding as an additional ground that Bunn, not Reese, had signed Reese's income and expense declarations. Levy attempted to take Bunn's deposition, but the trial court granted her motion for a protective order.

On October 15, Reese and Bunn went on the offensive by filing a cross-motion for $10,000 in sanctions against Levy and Guy. The notice stated sanctions were sought under section 128.7 (sanctions against attorney or unrepresented party for violation of certificate of merit created by signing or presenting papers to the court); section 575.2, California Rules of Court, rule 227, and Superior Court of Orange County Rules, rule 454 (sanctions for violating local court rules); and section 2023 (misuse of discovery process). The notice stated sanctions were sought because Guy and Levy had abused the discovery process, ignored local court rules, filed pleadings to harass Reese, and caused needless delay in the proceedings. The motion was not "pre-served" on Levy as required by section 128.7, subdivision (c)(1). The moving papers suggested that requirement be ignored because it was unreasonable under the circumstances.

Both sanctions motions came on for hearing on October 31. Guy called Veldhuis as a witness; she testified in accord with her earlier declaration and deposition that she had not seen, signed, or authorized the signing of her declaration. With respect to Bunn's practice of signing declarations under penalty of perjury on behalf of her client and witnesses, Bunn explained she believed that to be a well-accepted practice in family law courts and argued there was no legal requirement that a declarant personally sign his or her declaration stating, "That is not what the code says. [Section 2015.5] simply says in the State of California we do not have to have affidavits. We can have statements signed under penalty of perjury and outside of California if we stay within the laws of the State of California. That is all the code section says. *I can have the consent of my client to sign his name, and I have done so.* [¶] And until I know that I can't, I'm going to continue to do so with his consent and his knowledge after he has read the document." (Italics added.)

The court took the matter under submission. Two months later, it entered a seven-page order denying Guy's motion and granting Reese's, imposing $20,000 in sanctions against Guy and Levy.

In its written order, the court concluded Attorney Bunn had not engaged in any sanctionable conduct. She reasonably believed that her client, Reese, had properly obtained Veldhuis's signature on the declaration. When she learned Veldhuis had not signed the declaration, Bunn promptly withdrew the motion. The court did not make any comment on whether Reese's conduct in signing Veldhuis's name to the declaration was sanctionable or on whether Bunn's practice of signing her client's and witness's declarations under penalty of perjury was improper or sanctionable.

As to Reese's cross-motion for sanctions, the trial court concluded that because the dissolution petition was filed in 1988, section 128.7 was inapplicable. Nonetheless, the court found sanctions could be awarded under section 128.5 and awarded them under that section alone.

The trial court made several findings in support of sanctions against Levy and Guy: (1) Levy unreasonably thwarted Reese's efforts to obtain a custody modification; (2) Levy filed a sanctions motion accusing Bunn of intentionally submitting forged documents; (3) Levy's efforts to depose Bunn were a "fishing expedition"; (4) the Veldhuis declaration would not have caused great harm to Guy in any event; (5) it was "highly" probable that Levy's motive for harassing Bunn was economic because he was representing Guy pro bono; (6) Levy showed "bad faith and not a desire to promote settlement" when he advised the court that a civil action filed by Reese and Guy's minor child against Reese had been dismissed without prejudice, but could be refiled when the child reached 18 years; (7) Levy engaged in a "fishing expedition" when he deposed Reese because he questioned him about financial matters instead of focusing on custody issues; and (8) Levy "had the audacity" to call Veldhuis as a witness at the hearing on the sanctions motion when he knew that Veldhuis had been ordered by the court not to telephone Reese. Finally, the trial court suggested that in the event Levy and Guy appealed the $20,000 sanctions order, we too should sanction them. Levy has appealed; Guy has not.

I

Levy contends the order imposing sanctions must be reversed. We agree. Notice that sanctions were sought under section 128.7 was not sufficient to warn Levy or Guy that sanctions might be awarded under section 128.5. Therefore, the order imposing sanctions against them must be reversed.

Reese's motion for sanctions was brought under section 128.7 and several other sections which we need not discuss here.[2] The trial court correctly concluded sanctions could not be imposed under section 128.7 because that section is only applicable to actions filed on or after January 1, 1995. (§ 128.7, subd. (i).) This proceeding began in 1988. Additionally, Reese did not comply with section 128.7's pre-filing requirement (§ 128.7, subd. (c)(1)).[3] Nonetheless, the trial court found sanctions were appropriate under section 128.5, which had not been mentioned in the notice of motion or in Reese's moving papers. It held notice under section 128.7 sufficed. We disagree.

Adequate notice that sanctions are being considered is mandated by statute and the due process clauses of the federal (U.S. Const., 14th Amend.) and state (Cal. Const., art. I, § 7) Constitutions. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 652 [183 Cal.Rptr. 508, 646 P.2d 179]; *Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 930 [219 Cal.Rptr. 562].) Because of the significant differences between sections 128.7 and 128.5, a motion for sanctions under only the former does not provide a basis for imposition of sanctions under the latter.

Section 128.7 was an experimental statute when adopted in 1994. It was originally slated to be automatically repealed on January 1, 1999, but the repeal date has been extended to January 1, 2003. (See Stats. 1998, ch. 121, § 2.) Under section 128.7, an attorney or *unrepresented party* who files a pleading, motion or similar paper impliedly certifies it has legal and factual merit. That certification includes: The paper is not presented for an improper purpose (i.e., to harass, cause unnecessary delay, or increase costs of litigation); the legal contentions are warranted; and the factual contentions have evidentiary support. (§ 128.7, subd. (b).) The attorney or *unrepresented party* is subject to sanctions for violation of this certification.

■ Section 128.5 authorizes the trial court to sanction a party, the party's attorney, or both for "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).) A bad faith action or tactic is considered "frivolous" if it is "totally and completely without merit" or instituted "for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).) Whether an action is frivolous is governed by an objective standard: Any reasonable attorney would agree it is totally and

---

[2]The court did not find sanctions appropriate under any of the other statutes noticed in Reese's motion, and there is no argument on appeal any of those statutes support the sanctions order.

[3]Reese argued below that the trial court is free to disregard this safe harbor requirement, but cited no authority in support of that suggestion. The safe harbor provisions are mandatory. (See *Malovec* v. *Hamrell* (1999) 70 Cal.App.4th 434, 441 [82 Cal.Rptr.2d 712].)

completely without merit. (*Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 12 [244 Cal.Rptr. 581].) But there must also be a showing of an improper purpose, i.e., *subjective* bad faith on the part of the attorney or party to be sanctioned. (*Campbell* v. *Cal-Gard Surety Services, Inc.* (1998) 62 Cal.App.4th 563, 574 [73 Cal.Rptr.2d 64].)

■ Because of the differences between the two statutes, notice under one does not suffice for the other. First, under section 128.7, only an attorney or *unrepresented party* may be sanctioned. It does not authorize sanctions against the represented party. Under section 128.5, the party, attorney, or both, may be sanctioned. Thus, a motion for sanctions against Guy under section 128.7, under which she could not be sanctioned, did not put her on constitutionally adequate notice. Second, section 128.7 imposes a lower threshold for sanctions against an attorney. It requires only that the conduct be objectively unreasonable. But under section 128.5, there must also be a showing of subjective bad faith. (See *Llamas* v. *Diaz* (1990) 218 Cal.App.3d 1043, 1047 [267 Cal.Rptr. 427].) Since Guy and Levy were not put on notice that sanctions were sought against them under section 128.5, there was no reason for them to put forward any defense of their subjective intent. Therefore, it was wholly improper for the court to draw conclusions about it.

Although only Levy has appealed the order imposing sanctions, we reverse the order as to Guy as well. We find support for so doing in *Estate of McDill* (1975) 14 Cal.3d 831 [122 Cal.Rptr. 754, 537 P.2d 874]. In that case the probate court awarded one-half of the decedent's estate to her two nieces, her next of kin, and the other half to the cousins of the decedent's predeceased husband. The Supreme Court ruled the entire estate should have been distributed to the decedent's two nieces (*id.* at p. 840), but only one of them had appealed. ■ In deciding to reverse the judgment as to both nieces, the court noted, "As a general rule, where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the nonappealing parties. [Citations.] That general rule has an important exception, however: '[W]here the part [of a judgment] appealed from is so interwoven and connected with the remainder, . . . that the appeal from a part of it . . . involves a consideration of the whole, . . . if a reversal is ordered it should extend to the entire judgment. The appellate court, in such cases, must have power to do that which justice requires and may extend its reversal as far as may be deemed necessary to accomplish that end.' [Citation.]" (*Ibid.*) The court extended the rule to apply where only one party appealed an adverse judgment (*ibid.*), and the rule has been invoked to reverse an entire sanctions award even though only one sanctioned party appealed. (See *Eby* v. *Chaskin* (1996) 47 Cal.App.4th 1045,

1049 [55 Cal.Rptr.2d 517] [reversing entire sanctions order against two lawyers even though one did not appeal].)

Here, the order was joint and several against Guy and Levy, and the lack of notice affected both. The conclusion is inescapable that Guy did not appeal the order because she feared even more sanctions on appeal. The written order focused almost exclusively on the conduct of Levy, not Guy. It would be manifestly unjust to let this sanction order stand against Guy when it was an improper order in the first place and she had been specifically warned by the trial court not to appeal it.[4]

Although we reverse the order for procedural reasons, we will comment briefly on some of the substantive issues. To the extent sanctions were imposed against Levy and Guy for having sought sanctions, it was improper. Guy sought sanctions against Reese and Bunn for their having signed declarations on behalf of others. That motion was not "totally and completely without merit." (§ 128.5)

██ Bunn's custom of signing declarations under penalty of perjury on behalf of her clients and witnesses, even though we believe she was not intending to deceive the court by so doing, is completely improper. She argues this is a common practice in family law court. If that is so, the informality of family law proceedings has gone too far.[5] (See *County of Alameda* v. *Moore* (1995) 33 Cal.App.4th 1422, 1427 [40 Cal.Rptr.2d 18].)

Section 2015.5 permits submission of unsworn declarations provided they are certified by the declarant to be true under penalty of perjury, *subscribed by him or her.* "Subscribe" means "to sign *with one's own hand.*" (*People* v.

---

[4]The written order stated, "If . . . Levy decides to appeal this judgment, this court believes that the court of appeals [sic] stated [sic] that 'after considering the undue burden this appeal has placed on the legal system and the consumption of this court's time . . .' a sanction of not less than three times the plaintiff's expenses in opposing the motion to dismiss was determined to be an appropriate sanction." The obvious import of this purely gratuitous comment is that Levy and Guy were being warned not to appeal the sanctions order. Guy, who is not an attorney, would most certainly have believed she would face triple sanctions if she did.

We are deeply troubled by the trial court's admonition. This court is not accustomed to being advised by the trial court as to when appellate sanctions are appropriate, and we consider it highly inappropriate for a trial court to attempt to dissuade a litigant from exercising his or her right to appeal. (See *MacDonald* v. *Superior Court* (1977) 75 Cal.App.3d 692, 696 [141 Cal.Rptr. 667] [shutting off appeal otherwise authorized by law is not within powers of trial court whose judgment is the subject of the appeal].)

[5]In another opinion, *In re Marriage of Reese & Guy* (Apr. 29, 1997) G019576 (nonpub. opn.), we cautioned these very same parties that the informality of the family court proceedings had gone too far and the court had erred in accepting as evidence Bunn's unsworn statement in argument as to certain amounts Reese had paid.

*Pierce* (1967) 66 Cal.2d 53, 59, fn. 5 [56 Cal.Rptr. 817, 423 P.2d 969], italics added; see also *Dodge* v. *Free* (1973) 32 Cal.App.3d 436, 443 [108 Cal.Rptr. 311].) The whole point of permitting a declaration *under penalty of perjury*, in lieu of a sworn statement, is to help ensure that declarations contain a truthful factual representation and are made in good faith. (*Ancora-Citronelle Corp.* v. *Green* (1974) 41 Cal.App.3d 146, 148 [115 Cal.Rptr. 879].) "The oath or declaration must be in such form that criminal sanctions of perjury might apply where material facts so declared to be true, are in fact not true or are not known to be true." (*Id.* at p. 150; see Pen. Code, § 118.)

Bunn argues her clients *are* subject to criminal prosecution if they knowingly give her false information in preparation of their declaration which she signs for them. But what tremendous mischief this would make if we were to approve this practice. If Bunn's client denies being familiar with, or having authorized a declaration which turns out to be false, Bunn would have to be the chief prosecution witness against her client. In other words, every time Bunn conveniently signs her client's name to a declaration under penalty of perjury, she creates an inherent conflict between herself and her client.

Our criticism is not reserved solely for Bunn. The sanctions requested were not premised entirely on Levy's and Guy's complaints about Bunn's practice with respect to signing declarations. The trial court made findings with regards to a course of improper and obstreperous conduct by Levy in this case. Had Reese's motion been procedurally proper, and not in large part premised on the declarations issue, we might well find much of Levy's other conduct in this case to be sanctionable. We need not address that conduct here, but caution Levy that future sanctions may be upheld.

## II

Levy also argues the trial court erred in denying Guy's motion for sanctions against Bunn and Reese. The trial court did not make any specific findings as to whether Reese's signing Veldhuis's declaration or Bunn's signing Reese's and Cua's declarations was improper. Levy argues their conduct was sanctionable *per se* and Guy's motion for sanctions should have been granted.

There is a fundamental problem with Levy's contention. The motion for sanctions was Guy's, not Levy's. Guy was the moving party; Levy was her attorney. Levy has appealed the imposition of sanctions *against him.* Guy has not appealed from any part of the order. Levy, as an appellant, does not have standing to raise issues which do not pertain to him. Although we have applied the doctrine of *Estate of McDill, supra,* 14 Cal.3d 831, to relieve Guy

of an improper award of sanctions against her, we find no compelling reason to remand for further proceedings on Guy's motion for sanctions.

The order imposing sanctions on Guy and Levy is reversed. Each party shall bear its own costs on appeal.

Crosby, Acting P. J., and Rylaarsdam, J., concurred.