[No. F035332. Fifth Dist. Sept. 26, 2001.]

JOSEPH W. LEVY et al., Plaintiffs and Respondents, v.
GERALD H. BLUM, as Trustee, etc., Defendant and Appellant;
GIBSON, DUNN & CRUTCHER LLP, Objector and Appellant.

**[Opinion certified for partial publication.\*]**

———

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts C and D of DISCUSSION.

**COUNSEL**

Gibson, Dunn & Crutcher, David Cathcart, Wayne W. Smith, David A. Battaglia and Robert S. Warren for Defendant and Appellant and for Objector and Appellant.

Baker, Manock & Jensen, Kendall L. Manock, Jeffrey A. Jaech and Kathleen A. Meehan for Plaintiffs and Respondents.

## OPINION

**WIELAND, J.***—This appeal challenges a trial court's $25,992 sanctions award under Code of Civil Procedure section 128.5[1] against Gerald H. Blum (Blum) and his attorney, Gibson, Dunn & Crutcher LLP (Gibson) (collectively appellants), in favor of Joseph W. Levy (Levy), Bret Levy, Felicia Weston, and Jody Schlesinger (the Levy children) (collectively respondents).

After granting respondents' motion to enforce a settlement agreement that the parties had reached after a full day of negotiations, and which an attorney from Gibson had explicitly entered into the record before the trial court nearly nine months earlier, the trial court found that appellants' action of taking a position in "total disregard of the clear, unambiguous terms of the in-court settlement agreement" was frivolous and in bad faith. Appellants seek reversal, contending the trial court erred in finding (1) section 128.5, not section 128.7, was the applicable sanctions statute, (2) their actions were frivolous, and (3) the attorney fees and expenses sought were incurred as a result of their sanctionable conduct. Appellants further contend the trial court erred in awarding sanctions against Gibson personally, as well as against Blum, without prior notice.

We will find the court awarded sanctions under the appropriate statute, it did not abuse its discretion in finding that appellants' actions were frivolous, and that the amount awarded was incurred as a result of their sanctionable conduct. While we affirm the trial court's finding that Blum was given notice that sanctions were being sought against him, we will reverse the trial court's order awarding sanctions against Gibson because it was not given advance notice that sanctions were being sought against it personally.

### FACTUAL AND PROCEDURAL HISTORIES

Following Gertrude H. Klein's death on December 24, 1973, a testamentary trust was created pursuant to Klein's written will (the Klein trust). On January 2, 1974, the petition to admit Klein's will to probate was filed, and the will, creating the Klein trust, was admitted to probate on January 17, 1974. Pursuant to the will's terms, Klein designated Blum as the trustee of the trust, which contained 600 shares of E. Gottschalk & Co., Inc., stock. On February 6, 1979, a decree of final distribution of Klein's estate was filed, incorporating all of the terms of the Klein trust, including the appointment of Blum as trustee. Net income from the Klein trust was to be distributed

---

*Judge of the Madera Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]All further statutory references are to the Code of Civil Procedure unless otherwise noted.

equally between Levy and Blum. At the time of Blum's death, the trust's assets would be distributed equally, with one-half going to Levy or his offspring, and the other half to Blum's offspring.

On April 23, 1998, Levy filed his first of multiple petitions seeking to have the Klein trust divided into two separate trusts. Subsequently, Levy filed amended petitions on May 15, 1998, and June 25, 1998. The Levy children joined in the amended petition filed on June 25, 1998. Following Blum's objections to the June 25, 1998, petition, the trial court granted Levy leave to file a further amended petition. As a result, Levy filed a fourth petition on August 12, 1998.

By this petition, Levy sought to divide the Klein trust to accommodate the different investment objectives of the trust's beneficiaries, and to commence an action for breach of trust against Blum. By that time, the Klein trust had grown through an exchange of the 600 shares of E. Gottschalk & Co., Inc.'s stock for shares of the newly formed Gottschalks Inc., at a ratio of 1,100 to 1, and a later stock split, to nearly one million shares of Gottschalks stock. The trust also consisted of tax-free municipal bonds purchased after the sale of some of the stock. Levy sought to enjoin Blum from committing a breach of trust by selling the Gottschalks stock held in the Klein trust. Alternatively, Levy sought to remove Blum as trustee. Blum and the Blum children, Ryan Blum and Derek Blum, objected to Levy's proposed division of the Klein trust, claiming that Levy's proposal would result in an unequal and non-pro-rata division of the trust.

On March 23, 1999, which was the first day of trial on Levy's petition, a settlement conference was held. That same day, respondents entered into a settlement agreement with Blum, individually and as sole trustee of the Klein trust, and the Blum children. Blum's attorney, David A. Battaglia of Gibson, placed the settlement agreement's terms on the record before the trial court.

Paragraph 7 of the settlement agreement provides:

"[MR. BATTAGLIA:] Paragraph seven: The Klein Trust shall be divided into two trusts.

"MR. BLUM: Say equal.

"MR. BATTAGLIA: The Klein Trust shall be divided into two trusts. Mr. Blum shall remain trustee of the trust which benefits him and his issue, parens, the, quote, Blum Trust, close quote, close parens. Mr. Levy shall be

the trustee of the trust which benefits him and his issue, parens, the, quote, Levy Trust, close quote, close parens. The division shall be equal."

The parties further agreed in paragraph 10 that both trusts were to be administered and distributed in accordance with the terms and conditions as set forth in the decree of final distribution as to the Klein trust, except the Levy trust would benefit the Levy family and the Blum trust would benefit the Blum family.

At the date of settlement, as recited in paragraph 8 of the settlement agreement, the Klein trust consisted primarily of three assets: 975,100 shares of Gottschalks common stock; municipal bonds valued at approximately $1,719,515; and a money market account with an approximate cash value of $28,062.[2] With respect to these three assets, paragraph 9 of the settlement agreement provides:

"MR. BATTAGLIA: . . . The Blum Trust shall consist of, parens, one, close parens, all bonds and the money market account currently held by the Klein Trust, parens, assuming an estimated value of 1,747,577 dollars, close parens, minus all of the unpaid attorneys' fees pursuant to paragraph three, semicolon, parens, two, close parens, 382,550 shares of Gottschalks stock, parens, assuming that the total shares held by the Klein Trust is 975,100, close parens, semicolon, and, parens, three, close parens, one-half of all other assets held by the trust other than the bonds, money market account, and Gottschalks stock.

"The Levy Trust shall consist of, parens, one, close parens, 592,550 shares of Gottschalks stock, parens, assuming that the amount of the total shares held by the Klein Trust is 975,100, close parens, and, parens, two, close parens, one-half of any other assets held by the trust other than the bonds, money market account, and Gottschalks stock.

"To the extent that more or less than 200,000 dollars of additional attorneys' fees are unpaid currently, then the benefit or expense of the difference shall be split equally between the Blum Trust and the Levy Trust.

---

[2]The trust also consisted of an interest-bearing account of approximately $30,000, which was not subject to the division of assets set forth in the settlement agreement. Instead, as part of the settlement of certain claims of the Klein trust and the Blum children, the Blum children were to receive one-half of the cash in the interest-bearing account that was attributable to Levy, i.e., $15,000, and the income Levy had received, and would continue to receive until division of the Klein trust's assets, from the Klein trust, which had been held in a separate savings account and totaled approximately $71,000, provided the total amount paid to the Blum children under this provision did not exceed $125,000.

"Blum shall receive all income from the Blum Trust, and Levy shall receive all income from the Levy Trust as a result of this equal division."[3]

The settlement agreement did not specify a certain date for division of the Klein trust's assets, but did contain conditions that needed to be satisfied before the division could occur. One such condition required Levy to obtain a private letter ruling from the Internal Revenue Service (IRS) assuring all parties that the division would not cause any of the trusts to lose their generation-skipping tax exempt status. Pursuant to the agreement, the trial court retained jurisdiction to enforce the settlement agreement until it was fully executed.

After the settlement agreement was recorded, Levy's attorneys, believing that the IRS would require Blum, as sole trustee of the Klein trust, be an applicant for the ruling request, submitted their draft of the ruling request to Blum for his comment and signature. Blum, however, suggested that the ruling request be modified to show that the number of Gottschalks shares going to the Blum and Levy trusts would be adjusted as of the date of physical division, based on the shares' market price on that date plus a $0.37 per share premium in favor of the Blum trust. Blum and his attorney contended the parties intended that the assets be equally divided, therefore the allocation of the Klein trust's assets should be determined at the time of division, not at the time the settlement agreement was entered into. Levy, on the other hand, contended that the division of assets was to be made as of the date the settlement agreement was entered into—March 23, 1999—based on an agreed share price of $7.37 per share, regardless of later changes in value.

With respect to the ruling request Levy was required to submit to the IRS, Blum took the position that although the parties disagreed about when the valuation of the Klein trust's assets was to take place for the purpose of dividing those assets, the parties could submit a ruling request to the IRS that set forth each parties' interpretation of the settlement agreement and the respective values of the assets of the Blum and Levy trusts at the time of settlement and at the time of actual division.

On September 2, 1999, respondents filed a motion to enforce the terms of the settlement agreement and requested sanctions pursuant to section 128.5. The basis for the motion was Blum's refusal to execute the rulings request to the IRS adopting Levy's interpretation of the settlement agreement. Respondents claimed when the settlement agreement was entered into, the parties

---

[3]Apparently, before the settlement, Blum had indicated his pessimism about the future of the Gottschalks share price and his lack of interest in retaining the stock as a Klein trust investment because it did not pay dividends. Accordingly, the Levy trust was allocated more stock, while the Blum trust was allocated Levy's share of the municipal bonds and money market account.

set the price of the Gottschalks stock for purposes of dividing the Klein trust's assets at $7.37 per share, which was $0.37 above the stock's market price on the New York Stock Exchange at the time. Respondents claimed the parties agreed that $7.37 was a fair price for purposes of the division because, among other reasons, the stock had been trading at between $6.25 and $9 per share during the time the parties were involved in litigation. Respondents requested sanctions pursuant to section 128.5 on the ground that "Mr. Blum's refusal to comply with the confidential recorded settlement is, at best, frivolous."

Blum opposed the motion. Blum contended that the settlement agreement provided that allocation of assets between the Levy and Blum trusts was to be adjusted in the future based upon the price fluctuation of the Klein trust's main asset, 975,100 shares of Gottschalks common stock. Blum accused Levy of ignoring the "commitment to equality he made at the time of the settlement" and attempting to claim a disproportionate amount for himself, since the value of Gottschalks stock had recently increased. Addressing Levy's complaints that Blum was delaying matters by not signing Levy's rulings request, on September 14, 1999, Blum submitted his own rulings request setting out both interpretations of the settlement agreement and giving the IRS the ability to approve either or both of them.[4] Blum asked the court to charge the Klein trust's legal fees and expenses incurred in opposing the motion against the Levys' interest in the Klein trust, on the ground that Levy brought the motion in an attempt to use the court to obtain a greater share of the Klein trust's property, citing, among other authorities, section 128.5.

In their reply brief, respondents again requested sanctions against Blum on the ground that "Blum's conduct as trustee in repudiating the Recorded Settlement is insupportable." Respondents requested Blum, at a minimum, be sanctioned by ordering that no legal fees be paid from the Klein trust in connection with Blum's opposition to respondents' motion, including fees incurred for demanding a change in the settlement terms, submitting his own ruling request to the IRS, and renewing the proposal to sell all Gottschalks

[4]Respondents note that the IRS expressly prohibits, and will not rule upon, a request that contains alternative scenarios. (Rev. Proc. 99-1, 1999-1 I.R.B. 6, § 7.02 ["A letter ruling or a determination letter will not be issued on alternative plans of proposed transactions or on hypothetical situations"]; see also Rev. Proc. 2000-1, 2000-1 I.R.B. 4, § 7.02; Rev. Proc. 2001-1, 2001-1 I.R.B. 1, § 7.02.) Respondents' counsel informed Blum's counsel of this fact before Blum submitted the request for a ruling. Respondents claim Blum's request was submitted without notice to them, and that the IRS refused to rule on Blum's ruling request because of his presentation of alternatives. Blum contends that he submitted a redraft of the IRS request for ruling, along with a redlined copy, to respondents' counsel for Levy's review and comments on September 1, 1999, before submitting it to the IRS.

stock in the Klein trust. Respondents also requested that the court order Blum to personally reimburse them for the legal fees incurred in connection with enforcing the settlement agreement.

On December 9, 1999, a hearing was held on respondents' motion. The parties stipulated to the trial court that the motion would be heard pursuant to section 664.6, which governs entry of judgment pursuant to terms of a stipulation for settlement, as well as section 1060, which provides for declaratory relief. David A. Battaglia of Gibson was present on Blum's behalf, as was his local counsel, Janet L. Wright of Betts & Wright. The counsel for the Blum children was also present, who made clear that the Blum children were joining in Blum's opposition to the motion on the basis that the division was supposed to be equal.

After hearing argument, the trial court read its decision from the bench. The trial court stated:

"This Court finds that it's wholly incredible and without any merit whatsoever that, number one, it was the intent of the parties, Mr. Blum or his attorneys, that the Klein Trust was to be divided pursuant to market values of Gottschalks stock existing at the time of the division; number two, also holding wholly incredible that the Blum attorneys had a right, on behalf of their client, to write a request for ruling to the IRS in which they presented a scenario for division based upon the value of the Gottschalks stock at the time of division.

"I find, also, that pursuant to Section 128.5 of the Code of Civil Procedure the following actions of Mr. Blum and his attorneys were taken in bad faith, that is, without subjective good faith or honest belief in the propriety or reasonableness of such actions: Number one, contending the Klein Trust assets are to be divided according to a future market value of Gottschalks stock at the time of division; number two, requesting the IRS ruling by letter of September 14th, '99, in which a proposal is submitted contrary to the express terms of the settlement agreement; number three, defending the propriety of these actions in this motion.

"Each of these actions was taken in total disregard of the clear, unambiguous terms of the in-court settlement agreement of March 23rd, 1999, terms, which I will add, were painstakingly stated by Mr. Blum's own attorneys, in open court, reading from a written document. Each of these actions is sufficient in itself to invoke the penalties of Section 128.5.

"The Court finds that pursuant to Section 128.5 that these bad faith actions by Mr. Blum and his attorneys described above are each frivolous, that is,

completely devoid of merit. They caused Mr. Levy and his attorneys to incur reasonable expenses and attorney's fees in the amount of 25,992 dollars for attorney's fees from August 1st through November 30th, plus such expenses and additional attorney's fees on this matter as Mr. Levy's attorneys shall submit on duly noticed motion."

The trial court ordered that the settlement agreement be carried into effect without regard to the value of the Gottschalks stock at the time of division, that Blum's attorneys immediately withdraw Blum's request for rulings submitted to the IRS, and that Levy submit a request for rulings to the IRS. With respect to sanctions pursuant to section 128.5, the trial court held Blum and Gibson jointly and severally liable to respondents' attorney, the law firm of Baker, Manock & Jensen, for the fees and costs respondents incurred in bringing the motion, and ordered them to pay the sum of $25,992 to Baker, Manock & Jensen within 30 days. The court also stated that Baker, Manock & Jensen could bring a duly noticed motion for additional payment of fees and costs. The court further ordered that the Klein trust's assets not be used to pay Baker, Manock & Jensen's fees and costs, and that Levy's interest in the Klein trust not be used to pay fees and costs Blum incurred for legal services on all matters pertaining to the request for rulings dated September 14, 1999, and the defense of respondents' motion.

The trial court ordered respondents' counsel to prepare an order and submit it to Blum's counsel for approval as to form and content. Although the parties requested sanctions against each other in their papers, at no time prior to the trial court's ruling was the issue of sanctions discussed at the hearing by any party.

On December 17, 1999, Levy submitted a proposed order to Blum. On December 20, 1999, Blum and Gibson filed objections to the portion of the proposed order imposing sanctions. On December 29, 1999, Levy filed a brief in opposition to these objections. On January 5, 2000, Blum and his counsel filed a response in support of their objections to sanctions.

On January 18, 2000, the trial court issued a written opinion overruling the objections of Blum and his counsel to the sanctions order and signed an order imposing sanctions against Blum and his counsel, jointly and severally, totaling $25,992. The court's order reflected the basis for sanctions given orally at the hearing. This timely appeal solely from the order imposing sanctions followed.

DISCUSSION

A. *Sections 128.5 and 128.7*

There are two principal statutes that provide for the imposition of sanctions against an attorney and/or a party for improperly opposing a motion or petition: sections 128.5 and 128.7.

A trial court may impose sanctions pursuant to section 128.5 against a party, the party's attorney, or both, for "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay," when the actions or tactics "arise from a complaint filed, or a proceeding initiated," prior to January 1, 1995. (§ 128.5, subds. (a), (b)(1); see also *Malovec v. Hamrell* (1999) 70 Cal.App.4th 434, 437-438 [82 Cal.Rptr.2d 712].) A bad faith action or tactic is considered "frivolous" if it is "totally and completely without merit" or instituted "for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).) Whether an action is frivolous is governed by an objective standard: any reasonable attorney would agree it is totally and completely without merit. (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 12 [244 Cal.Rptr. 581]; *In re Marriage of Reese & Guy* (1999) 73 Cal.App.4th 1214, 1220-1221 [87 Cal.Rptr.2d 339].) There must also be a showing of an improper purpose, i.e., subjective bad faith on the part of the attorney or party to be sanctioned. (*Campbell v. Cal-Gard Surety Services, Inc.* (1998) 62 Cal.App.4th 563, 574 [73 Cal.Rptr.2d 64]; *In re Marriage of Reese & Guy, supra*, at p. 1221.) Section 128.5 requires notice and an opportunity to be heard before the imposition of sanctions, and the court must issue a written order reciting in detail the conduct justifying sanctions. (*Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc.* (1997) 60 Cal.App.4th 352, 367 [70 Cal.Rptr.2d 449].)

When the Legislature enacted section 128.5, its intent was " 'to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized . . . .' " (*Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc., supra*, 60 Cal.App.4th at p. 367.) Section 128.5 authorizes the award of attorney fees as a sanction to control improper resort to the judicial process. (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 994-995 [35 Cal.Rptr.2d 93].) The statute permits the award of attorney fees, not simply as appropriate compensation to the prevailing party, but as a means of controlling burdensome and unnecessary legal tactics. (*Ibid.*) Section 128.5 requires much more than a party acting with "no good reason" to justify an award of sanctions. There must be a showing not only of a meritless or frivolous action or tactic, but also of bad

faith. (*Pacific Trends Lamp & Lighting Products, Inc. v. J. White, Inc.* (1998) 65 Cal.App.4th 1131, 1136 [76 Cal.Rptr.2d 918].)

A concern was raised that the subjective sanction procedures of section 128.5 were ineffective. Therefore, the Legislature revised the procedures for sanctions by enacting section 128.7 in "an effort to largely bring California sanctions practice into line with rule 11 of the Federal Rules of Civil Procedure (28 U.S.C.)" (*Goodstone v. Southwest Airlines Co.* (1998) 63 Cal.App.4th 406, 419 [73 Cal.Rptr.2d 655]; *Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc., supra,* 60 Cal.App.4th at p. 368; *Malovec v. Hamrell, supra,* 70 Cal.App.4th at pp. 437-438.) Since the language of rule 11 of the Federal Rules of Civil Procedure is virtually identical to that of section 128.7, federal case law construing revised rule 11 is persuasive authority with regard to the meaning of section 128.7. (*Cromwell v. Cummings* (1998) 65 Cal.App.4th Supp. 10, 14, fn. 6 [76 Cal.Rptr.2d 171]; *Malovec v. Hamrell, supra,* at p. 440.)

Section 128.7 was an experimental statute when adopted in 1994. It was originally slated to be automatically repealed on January 1, 1999, but the repeal date was extended to January 1, 2003. (*In re Marriage of Reese & Guy, supra,* 73 Cal.App.4th at p. 1220; Stats. 1998, ch. 121, § 2.) Therefore, section 128.7 is effective for "complaints or petitions filed" from January 1, 1995, to January 1, 2003. (§ 128.7, subds. (i) & (j); *Malovec v. Hamrell, supra,* 70 Cal.App.4th at p. 438.)

Under section 128.7, an attorney or unrepresented party who files a pleading, motion, or similar paper must sign the document, which impliedly certifies the pleading has legal and factual merit. (§ 128.7, subd. (a).) The signature reflects the certification of the attorney or unrepresented party that the pleading is not being presented for an improper purpose; the legal contentions are warranted by law or nonfrivolous argument for extension, modification or reversal of existing law; the allegations and factual contentions have evidentiary support or are likely to have such support after a reasonable opportunity to further investigate; and the denials of factual contentions are warranted by the evidence. (§ 128.7, subd. (b); *In re Marriage of Reese & Guy, supra,* 73 Cal.App.4th at p. 1220; *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 130 [87 Cal.Rptr.2d 594].) The attorney or unrepresented party is subject to sanctions for violation of this certification. (*In re Marriage of Reese & Guy, supra,* at p. 1220.)

Section 128.7 provides two procedures that may lead to the imposition of sanctions if the certification standards are violated: a party may move for sanctions, or the court may initiate sanctions on its own motion. (§ 128.7,

subd. (c).) Once the statutory notice and hearing requirements are discharged, the court may impose appropriate sanctions that are sufficient to deter future misconduct. Such sanctions may consist of nonmonetary directives, penalties payable to the court, and, on a party's motion, monetary sanctions payable to the moving party "of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." (§ 128.7, subd. (d); *Malovec v. Hamrell, supra,* 70 Cal.App.4th at p. 443.)

Section 128.7 contains a safe harbor provision specifying the motion for sanctions may not be filed "unless, within 30 days after service of the motion, . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." (§ 128.7, subd. (c)(1).) The party seeking sanctions must follow a two-step procedure. First, the party must serve a notice of motion for sanctions on the offending party at least 30 days before filing the motion with the court, which specifically describes the sanctionable conduct. (*Ibid.*) Service of the motion on the offending party begins a 30-day safe harbor period during which the sanctions motion may not be filed with the court. (*Ibid.*) If the pleading is withdrawn, the motion for sanctions may not be filed with the court. (*Malovec v. Hamrell, supra,* 70 Cal.App.4th at p. 440.) If the pleading is not withdrawn, the motion for sanctions may then be filed. (*Ibid.*)

The trial court must follow a similar two-step procedure if it seeks to impose sanctions against a party on its own motion pursuant to section 128.7. (*Malovec v. Hamrell, supra,* 70 Cal.App.4th at p. 440.) The trial court may issue an order to show cause as to why sanctions should not be imposed and set the matter for a hearing at least 30 days after service of the order. The offending party may withdraw the improper pleading during this 30-day period. If the improper pleading is withdrawn, sanctions may not be imposed. If the pleading is not withdrawn, the offending party responds to the order to show cause, the court holds a hearing, and sanctions may be imposed. (*Ibid.*)

The Legislature crafted sections 128.5 and 128.7 to "strike a balance between competing interests: the need to control improper litigation 'tactics' and the desire to avoid chilling vigorous advocacy." (*Pacific Trends Lamp & Lighting Products, Inc. v. J. White, Inc., supra,* 65 Cal.App.4th at p. 1136.) There are differences, however, between the type of sanctions authorized by these statutes. First, under section 128.7, only an attorney or unrepresented party may be sanctioned; sanctions against a represented party are not authorized. Under section 128.5, the court may impose sanctions against the party, the attorney or both. (*In re Marriage of Reese & Guy, supra,* 73

Cal.App.4th at p. 1221.) Second, section 128.7 imposes a lower threshold for sanctions against an attorney and only requires the attorney's conduct be objectively unreasonable. Sanctions imposed under section 128.7 are not designed to be punitive in nature, but rather to promote compliance with statutory standards of conduct. (*Cromwell v. Cummings, supra,* 65 Cal.App.4th at p. Supp. 14; *Malovec v. Hamrell, supra,* 70 Cal.App.4th at p. 441.) In contrast, section 128.5 requires a showing of subjective bad faith. (*In re Marriage of Reese & Guy, supra,* at p. 1221; *Llamas v. Diaz* (1990) 218 Cal.App.3d 1043, 1047 [267 Cal.Rptr. 427].)

With these principles in mind, we turn to the sanctions imposed against appellants pursuant to section 128.5.

## B. *Applicability of Section 128.5*

■ Appellants contend the sanctions award was improper because it was based on the wrong statute—section 128.5. Specifically, appellants contend that because Levy's initial petition was filed after December 31, 1994, sanctions had to be sought and imposed pursuant to section 128.7, not section 128.5. Appellants conclude that since respondents did not seek sanctions pursuant to section 128.7, and section 128.7's safe harbor provisions were not followed, i.e., appellants were not served with a noticed motion for sanctions and given 30 days to withdraw Blum's opposition to respondents' motion, the sanctions award must be reversed.

■ Appellants are correct that because of the differences between the two statutes, notice under one statute does not suffice for notice under the other. (See *In re Marriage of Reese & Guy, supra,* 73 Cal.App.4th at p. 1221 [sanctions improperly awarded under § 128.5 when sanctions specifically sought under § 128.7].) Moreover, a court has no authority to award sanctions that are sought under one statute when the other statute is applicable. (See *Murphy v. Yale Materials Handling Corp.* (1997) 54 Cal.App.4th 619, 623-624 [62 Cal.Rptr.2d 865] [court erred in awarding sanctions sought under § 128.7 when § 128.5 was the applicable statute].) ■ Accordingly, since sanctions in the present case were sought and awarded pursuant only to section 128.5, we may uphold the sanctions award only if section 128.5, rather than section 128.7, is the applicable statute here.

Contrary to appellants' assertion, the facts that Levy's initial filing with respect to his dispute with Blum regarding the Klein trust occurred after December 31, 1994, and that the filing was labeled a "petition" are not determinative of whether section 128.7 or section 128.5 applies. While it is true that section 128.7 states that it applies to "a complaint or petition filed

on or after January 1, 1995," (§ 128.7, subd. (i)) this language must be interpreted in light of section 128.5, which states that it applies to "actions or tactics [which] arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994." (§ 128.5, subd. (b)(1); *Murphy v. Yale Materials Handling Corp., supra,* 54 Cal.App.4th at pp. 623-624.)

In *Murphy,* the court addressed the issue of whether the trial court had authority to award sanctions against the plaintiffs under section 128.7, when sanctions were based on the plaintiffs' filing in March 1995 of a motion to file an amended or supplemental complaint, but the original complaint was filed in August 1991. In concluding that section 128.5, not section 128.7, applied, the court reasoned: "While the language of section 128.7 applying the section 'to a complaint or petition filed on or after January 1, 1995' might permit concluding an amended or supplemental complaint 'presented' to the court after January 1, 1995, would be subject to its requirements, such a reading of the statute cannot be squared with the explicit language that section 128.5 controls actions or tactics which 'arise from a complaint filed . . . before December 31, 1994.' Our interpretation of a statute must be mindful both of the words used and of the legislative scheme of which it is a part. (*Pasadena Police Officers Assn.* v. *City of Pasadena* (1990) 51 Cal.3d 564, 575 [273 Cal.Rptr. 584, 797 P.2d 608].)" (*Murphy v. Yale Materials Handling Corp., supra,* 54 Cal.App.4th at pp. 623-624.)

The interpretation of sections 128.5 and 128.7 by the court in *Murphy* applies with equal force here. While section 128.7's language applying the section "to a . . . petition filed on or after January 1, 1995" might permit concluding any paper labeled a "petition" filed with the court after January 1, 1995, would be subject to its requirements, this reading of section 128.7 cannot be squared with section 128.5's explicit language that it controls actions or tactics which "arise from . . . a proceeding initiated, on or before December 31, 1994."

Thus, the issue presented here is not whether this particular proceeding was initiated by a petition, but whether appellants' "actions or tactics," which the trial court found to be in bad faith, "arise from . . . a proceeding initiated, on or before December 31, 1994." (§ 128.5, subd. (b)(1).) The only proceeding with respect to the Klein trust initiated before December 31, 1994, was the admission to probate of Klein's will in 1974, which created the Klein trust. In 1979, an order of final distribution incorporating the terms of the Klein will was filed. Therefore, section 128.5 will apply if appellants' actions found to be in bad faith, i.e., "1) contending the Klein Trust assets are to be divided according to a future market value of Gottschalks stock at the time of division; 2) requesting the IRS ruling by letter of September

14th, 1999, in which a proposal is submitted contrary to the express terms of the settlement agreement; and 3) defending the propriety of these actions in opposing" respondents' motion, arise from the administration of the Klein trust.

While there are no published cases addressing this issue with respect to probate proceedings, two cases involving petitions for dissolution are instructive: *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139 [62 Cal.Rptr.2d 466], and *In re Marriage of Reese & Guy, supra,* 73 Cal.App.4th 1214.

In *Drake,* an interlocutory judgment of divorce was filed in 1960, with a final decree of divorce entered in 1961. In 1971, the couple's son was diagnosed with schizophrenia, and in 1983 he began living with his mother, who then created a trust to provide for him after her death. In 1988, the son, through his mother as conservator, entered into a stipulated judgment with his father in a civil case, in which the father agreed to pay a certain amount in child support. In April 1995, the mother filed an application for an order to show cause for modification of child support in their divorce case. The trial court ultimately increased the father's child support obligation, and granted a security order requiring him to pledge securities for the son's benefit, and placing a lien on the father's property. The father filed a motion for reconsideration, which the trial court denied. (*In re Marriage of Drake, supra,* 53 Cal.App.4th at pp. 1148-1150.) The court also imposed sanctions pursuant to section 128.5. (53 Cal.App.4th at pp. 1168-1169.)

The Court of Appeal found that the trial court did not abuse its discretion in awarding sanctions for the father's filing of the motion for reconsideration. In addressing the father's argument that section 128.5 did not apply to the mother's petition filed in April 1995, the court explained: "James contends that the sanctions award was improper because section 128.5 is applicable only to 'actions or tactics [that] arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994' (Code Civ. Proc., § 128.5, subd. (b)(1)), and Miriam's petition was filed in April 1995. However, because the underlying divorce action here was filed in 1960 or earlier, the sanctions award was not barred by the section 128.5 time limit." (*In re Marriage of Drake, supra,* 53 Cal.App.4th at p. 1169.)

In *In re Marriage of Reese & Guy,* a father filed an order to show cause to modify a 1993 child custody order in 1996, which had been entered after a 1988 petition for dissolution of marriage. After the father took the order to show cause off calendar, the mother filed a motion for monetary sanctions pursuant to section 128.5 against the father and his attorney, who countered

by seeking sanctions pursuant to section 128.7 against the mother and her attorney. The trial court, while concluding that section 128.7 was inapplicable because the dissolution petition was filed in 1988, nevertheless awarded sanctions against the mother and her attorney pursuant to section 128.5. (*In re Marriage of Reese & Guy, supra,* 73 Cal.App.4th at pp. 1217-1219.) The Court of Appeal, in holding that a trial court may not impose sanctions under section 128.5 when the motion for sanctions has been noticed under section 128.7, noted that the trial court "correctly concluded sanctions could not be imposed under section 128.7 because that section is only applicable to actions filed on or after January 1, 1995. (§ 128.7, subd. (i).) This proceeding began in 1988." (*In re Marriage of Reese & Guy, supra,* at p. 1220.)

Both *Drake* and *Reese & Guy* support the conclusion that the correct statute for imposition of sanctions in this case is section 128.5, not 128.7. Both cases involved proceedings arising from petitions for dissolution of marriage that had been filed well before January 1, 1995. In both cases, the trial court had continuing jurisdiction to determine the child support and custody issues raised after January 1, 1995. (See, e.g., *In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 469 [75 Cal.Rptr.2d 263] [stating general rule that once jurisdiction is acquired in a proceeding where child support is in issue, superior court jurisdiction over child support continues]; Fam. Code, § 3422 [except in certain circumstances, a court that has made a child custody determination has exclusive continuing jurisdiction over the determination].)

Like the court's continuing jurisdiction in the cases of *Drake* and *Reese & Guy,* the court in this case had continuing jurisdiction over the administration of the Klein trust since its admission to probate in 1974. Probate Code section 17300, subdivision (a) provides: "This article applies only to the following: [¶] (a) A trust created by a will executed before July 1, 1977, and not incorporated by reference in a will on or after July 1, 1977." Probate Code section 17301 (in the same article as Probate Code section 17300) provides in pertinent part as follows: "If a trust described in [Probate Code] Section 17300 continues after the distribution of the decedent's estate, the court in which the decedent's estate was administered retains jurisdiction over the trust for any of the purposes specified in Section 17200." Probate Code section 17200, subdivision (a) provides that a trust's trustee or beneficiary may petition the court concerning the internal affairs of the trust, and subdivision (b) sets forth a list of matters which are considered proceedings concerning the internal affairs of a trust. As stated in the Law Revision Commission comment to this section, the list of grounds "under subdivision (b) is not exclusive and is not intended to preclude a petition for any other

purpose that can be characterized as an internal affair of the trust." (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (1991 ed.) foll. § 17200, p. 194.)

The legislative purpose of Probate Code section 17300 is stated in the Law Revision Commission comment as follows: "The effect of this section is to limit the application of provisions for continuing jurisdiction of the court to two classes of trusts: (1) trusts created by a will executed before July 1, 1977, when trusts were no longer required to be subject to continuing jurisdiction [citing prior § 1120 of the Prob. Code], and not incorporated by reference thereafter, and (2) trusts that are specifically made subject to the continuing jurisdiction of the court by a provision in the trust instrument." (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code, *supra*, foll. § 17300, p. 209.)

Here, the underlying petition, which created the Klein trust as a testamentary trust, was filed in Fresno Superior Court in 1974. There is no evidence that the Klein trust, executed on January 25, 1973, was incorporated by reference in a later will. The Fresno Superior Court thus retained continuing jurisdiction over the internal affairs of the Klein trust. The instant case involves the internal affairs of the Klein trust, as it concerns removing a trustee and dividing a trust. (Prob. Code, § 17200, subd. (b)(10), (14).) Accordingly, like a petition for modification of child support, which involves the original divorce action, the sanctions award pertaining to the Klein trust's internal affairs involves the original probate proceeding, and therefore is not barred by the section 128.5 time limit.

Moreover, the actions the trial court found to be in bad faith, namely, taking the position that the property division specified in the settlement agreement did not apply, seeking the IRS ruling, and opposing respondents' motion to enforce the settlement agreement, arose not only from respondents' petition to divide the trust, but also ultimately from the ongoing administration of the Klein trust. Respondents' petition to divide the trust necessarily arises from the probate proceeding involving the administration of Klein's estate, and the creation and administration of the Klein trust because as respondents point out, a request to divide a trust necessarily "arises from" the creation and administration of the trust, just as a petition for modification of a child support order necessarily "arises from" the initial divorce proceeding.

Appellants' attempt to distinguish *Drake* fails. Appellants claim *Drake* is inapplicable because it involved contested proceedings between the same parties. As respondents point out, section 128.5 applies to actions or tactics

arising from "proceedings initiated" prior to 1995, not "contested proceedings initiated" prior to 1995. Moreover, a petition for dissolution may proceed as an uncontested matter, and it is not clear from either *Drake* or *Reese & Guy* that the petitions for dissolution involved contested proceedings. (See Cal. Rules of Court, rule 1241 [listing circumstances in which case will be treated as uncontested matter].) Thus, whether the proceeding was "contested" does not necessarily determine whether section 128.5 applies. Similarly, section 128.5 does not require that the "proceeding" involve the same parties. For example, section 128.5 would certainly apply to "actions or tactics" by a defendant who was brought into the case to replace a Doe defendant in 1995, where the case was initially filed prior to 1995.

Finally, appellants contend that section 128.7 applies here because the Probate Code labels actions regarding the internal affairs of a trust as "proceedings" that are commenced by the filing of a petition. (See Prob. Code, §§ 17200 ["a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust," and *"proceedings* concerning the internal affairs of a trust include . . ." (italics added)], 17201 ["A *proceeding* under this chapter is commenced by filing a petition" (italics added)]; see also Prob. Code, § 16420, subd. (a) ["If a trustee commits a breach of trust, . . . a beneficiary . . . may commence a *proceeding*" (italics added)].) Appellants reason that because Levy's petition involved the internal affairs of the Klein trust, it was a "proceeding" pursuant to the Probate Code, therefore it must also be a "proceeding" under section 128.5. Appellants conclude that since the petition was filed after December 31, 1994, and it is a "proceeding," section 128.5 cannot apply.

This contention, however, ignores the "arise from" language contained in section 128.5. In determining the applicability of section 128.5, the issue is whether the bad faith actions and tactics *"arise from* . . . a proceeding initiated" before December 31, 1994, not just whether a particular filing is termed a "proceeding." In this case, the actions found to have been undertaken in bad faith ultimately arose from the Klein trust established by the final decree of distribution entered in 1979. This is shown by appellants' contention in opposing respondents' motion to enforce the settlement agreement that respondents' interpretation of the settlement agreement would violate the terms of the Klein trust, which Blum claimed provided for equality in the allocation of the trust's assets.

For these reasons, the trial court was correct in finding the sanctions award pertaining to the Klein trust's internal affairs was governed by section 128.5, not section 128.7.

C., D.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## DISPOSITION

The order imposing sanctions on Gibson, Dunn & Crutcher LLP is reversed. In all other respects, the order is affirmed. Costs are awarded to respondents.

Ardaiz, P. J., and Vartabedian, J., concurred.

The petition of appellant Gerald H. Blum for review by the Supreme Court was denied December 12, 2001. Baxter, J., did not participate therein.

---

*See footnote, *ante*, page 625.